IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHELLEY DAVIS, | CASE NO. 3:22-cv-1259 |
| Plaintiff, | DISTRICT JUDGE JAMES G. CARR |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Shelley Davis filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In June 2020, Davis filed an application for Disability Insurance Benefits alleging a disability onset date of March 16, 2020,[1] and claiming she was disabled due to stage two acute renal failure, heart problems and a

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

pacemaker, anemia and iron deficiency, back pain and fusion surgery, chronic fatigue syndrome, depression, arthritis, "chronic open breast wounds that require surgery," blood clots, chronic migraines, right knee replacement, and not being able to walk more than five minutes. Tr. 685, 705. The Social Security Administration denied Davis's applications and her motion for reconsideration. Tr. 581, 592. Davis then requested a hearing before an Administrative Law Judge (ALJ). Tr. 660.

In April 2021, an ALJ held a hearing. Davis and a vocational expert testified. Tr. 375–413. In January 2021, the ALJ issued a written decision finding that Davis was not disabled. Tr. 351–70. The ALJ's decision became final on May 25, 2022, when the Social Security Appeals Council declined further review. Tr. 1–4; *see* 20 C.F.R. § 404.981.

Davis filed this action on June 18, 2022. Doc. 1. She asserts the following assignment of error:

> The ALJ failed to account for the limitations opined by the state agency experts.

Doc. 9, at 2.

**Evidence**

*1.      Personal and vocational evidence*

Davis was born in 1973 and was 46 years old on her alleged disability onset date. Tr. 369. She has a nursing degree and an associate's degree. Tr. 382. She used to work as an ophthalmology technician, accounts manager, sales associate, and licensed practical nurse. Tr. 388–89.

2

2.    *Consultative examiner*[2]

In September 2020, Davis saw Jinhui Wang, Psy.D., for a consultative exam at the Social Security Administration's request. Tr 2281. Tr. 2282. When asked "what limited her ability to work," Davis described physical problems. Tr. 2282. Davis recounted her work history and said that she was terminated from past jobs because she "got sick" and missed work. Tr. 2283. Dr. Wang asked Davis if Davis had psychological problems that interfered with her work. Tr. 2283. Davis answered that she became "really depressed" due to her physical problems and it was hard for her to concentrate. Tr. 2283. Her work was "satisfactorily completed" but it was hard for her to stay focused. Tr. 2283. Her relationship with her supervisors was "okay" and when asked about her relationship with "people on the job" she said that she "kept to [her]self a lot." Tr. 2283. As for work pressure, Davis said that she "kept [it] all inside" and that it was hard to "deal with." Tr. 2283.

Davis lived with her husband and her in-laws. Tr. 2283. When asked about her current psychological conditions, Davis said that she felt depressed and stayed in her room. Tr. 2283. She didn't want to go outside and she wanted to keep to herself. Tr. 2283. Davis described her daily activities: she drove, went grocery shopping once a week, and saw a doctor when she felt ill. Tr. 2283.

---

[2]    Davis only challenges the ALJ's decision as to her mental health impairments and, specifically, the opinion evidence. Doc. 9, at 3. She recounts the opinion evidence, *id*., at 3–4, and the Commissioner recites the opinion evidence and Davis's function report and hearing testimony. Doc. 10, at 2–5. So I only discuss that evidence.

3

She got along with people and communicated with her grown children "on the phone." Tr. 2283.

Dr. Wang's exam findings showed that Davis appeared sad and had adequate eye contact. Tr. 2284. Davis was alert, responsive and oriented; tracked the conversation flow; and showed no issues with understanding, remembering, attention, or concentration. Tr. 2284. She remained on task, kept an adequate pace, and had adequate remote recall. Tr. 2284. Davis had no impairment in reasoning or judgment. Tr. 2285.

Dr. Wang diagnosed Davis with an unspecified depressive disorder. Tr 2285. Based on her exam, Dr. Wang concluded that Davis's "intellectual functioning suggested that she was expected to be able to understand, remember, and carry out instructions in a work setting." Tr. 2285. When asked to describe Davis's ability to maintain attention, concentration, persistence, and pace to perform simple or multi-step tasks, Dr. Wang commented that Davis reported concentration issues but that Dr. Wang did not observe attention or concentration impairments during the exam. Tr. 2286. Dr. Wang commented that Davis's concentration and persistence "appeared satisfactory as [Davis] was able to remain on task and worked at an adequate pace for all clinical interactions during the evaluation." Tr. 2286. Dr. Wang wrote that if Davis's depressive symptoms worsened, they "could negatively impact this domain by interfering with her ability to focus and to concentrate." Tr. 2286.

4

As to Davis's ability to respond appropriately to supervision and co-workers, Dr. Wang stated that Davis was cooperative and displayed average social skills during the exam. Tr. 2286. Dr. Wang noted that Davis reported social withdrawal, which, Dr. Wang remarked, "could have a bit of a negative impact on her ability to interact with others in a work setting." Tr. 2286. And when asked to describe Davis's abilities to respond appropriately to pressures in a work setting, Dr. Wang commented that Davis denied having a history of psychiatric hospitalization and that there was "no reported history of mental or emotional deterioration in response to work exposure." Tr. 2286. Dr. Wang wrote that Davis's depressive symptoms "could lower her frustration tolerance and put her a bit at risk for workplace pressure at this time." Tr. 2286.

### 3. Function report

In late July 2020, Davis completed a function report. Tr. 734–41. Davis wrote that her physical impairments affected her ability to perform activities. Tr. 734, 739. She indicated that she did not have problems with her memory, concentration, understanding, following instructions, or getting along with others. Tr. 739. She could handle money and didn't need reminders to care for herself, take medication, or go places. Tr. 737, 738. About once a month Davis went out to dinner and spent time with family and friends, but had not been doing so as often as she had in the past. Tr. 738. She did not have any problems getting along with family, friends, neighbors, or others. Tr. 738.

5

Davis said that, unless she was tired, she had no trouble paying attention. Tr. 739. She could follow written instructions "very well" and spoken instructions "unless they were very long." Tr. 739. She got along well with authority figures and had never been fired or laid off from a job because of problems getting along with others. Tr. 739. When asked how well she handles stress, Davis wrote that it depends and explained that "[l]ately with being sick and not working" she was more stressed. Tr. 740. When asked how well she handled changes in routine, Davis described herself as "pretty flexible." Tr. 740.

### 4.  State agency opinions[3]

In October 2020, Mary Hill, Ph.D., reviewed Davis's record. Tr. 582–90. Dr. Hill found that Davis had no limitations understanding, remembering, or applying information. Tr. 585. Davis had mild limitations interacting with others and concentrating, persisting, and maintaining pace. Tr. 585. She had moderate limitations adapting or managing herself. Tr. 585. As for Davis's

---

[3]  When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

mental residual functional capacity (RFC),[4] Dr. Hill found that Davis could complete simple and some multi-step tasks in a predictable environment with few changes and flexible production demands and could adjust to occasional, routine changes in work environments. Tr. 590.

In January 2021, Cindy Matyi, Ph.D., reviewed Davis's record. Tr. 593–601. Dr. Matyi found that Davis had mild limitations understanding, remembering, and applying information and interacting with others. Tr. 596. Davis had moderate limitations concentrating, persisting, and maintaining pace and adapting or managing herself. Tr. 596. As for Davis's RFC, Dr. Matyi found that Davis could comprehend and remember "a variety of task instructions." Tr. 600. Davis could perform simple, one- to two-step tasks and occasional complex and detailed three- to four-step tasks. Tr. 600. She could maintain attention, make simple decisions, and adequately adhere to a schedule. Tr. 600. She would need "a relatively isolated workstation and supervisory support when first learning job tasks." Tr. 600. Davis "could relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." Tr. 600. She could "adapt to a setting in which duties are routine and predictable and in which changes are infrequent, explained in

---

[4]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

advance, and introduced slowly." Tr. 601. And Dr. Matyi wrote that Davis "would require supervisory support with goal-setting and planning." Tr. 601.

5.     *Hearing testimony*

Davis, who was represented by counsel, testified at the telephonic administrative hearing held in April 2021. Davis lives with her husband. Tr. 381. She has adult children. Tr. 381.

Davis discussed her physical impairments, symptoms, and limitations. Tr. 389–92. She stated that she only sleeps for about three hours a night and takes about three, two-hour naps a day. Tr. 392–93. She uses the internet, makes meals, cleans, and does laundry and other household chores. Tr. 393–94. When asked to describe how her memory problems affect her on a daily basis, Davis stated that she has problems with short- and long-term memory. Tr. 394. She sometimes has difficulty remembering conversations and she searches for words when speaking, which is frustrating. Tr. 394. She stated that she can read and follow a recipe to make cookies. Tr. 394–95.

Davis said that she used to read for pleasure but no longer does. Tr. 395. During the day she "kind of just sit[s] in [her] room." Tr. 395. Lately Davis wasn't "really do[ing] tasks." Tr. 395. She has been taking anxiety and depression medication for over a year. Tr. 395–96. Davis's primary care doctor used to prescribe that medication, but Davis stated that she "just started seeing a psychiatrist" because her depression has "really gotten bad." Tr. 396. She speaks to her psychiatrist weekly. Tr. 396.

8

Davis stated that she has no trouble finding or performing a job. Tr. 397. But she has trouble keeping a job because she gets sick and is terminated due to attendance issues. Tr. 396–97.

Davis said that her mental health problems cause more bad days than good days. Tr. 403–04. On a bad day she closes herself up in her room alone and cries. Tr. 404. She is not in as bad a place mentally as she was in the past, but she still has times when she feels frustrated about herself and her health, which is overwhelming. Tr. 405.

The ALJ discussed with the vocational expert Davis's past relevant work as an ophthalmologist technician, office manager, department manager, and licensed practical nurse. Tr. 406–07. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Davis could perform Davis's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 407–08. The vocational expert answered that such an individual could not perform Davis's past work but could perform the following jobs: cleaner housekeeper, assembler, and marker. Tr. 408–09.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.

2.  The claimant has not engaged in substantial gainful activity since March 16, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant had the following severe impairments: morbid obesity; cellulitis mastitis of the right upper extremity; left medial meniscus tear; status-post surgical repair, left knee; brachycardia; status-post pacemaker implant; lumbar degenerative disc disease with left-sided radiculopathy; status-post lumbar fusion 2016; epileptic-like seizure-like activity; and depression (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) except: she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, crouch and crawl; occasionally kneel; never operate foot controls with the left lower extremity; and frequently reach with the right upper extremity. She can never be exposed to hazards such as moving machinery, unprotected heights, or occupational driving. She can perform simple, routine, and repetitive one-to-two step and occasional three-to-four step tasks, but not at a production rate pace (so, for example, no assembly line work). She can make simple work-related decisions, maintain attention, and adequately adhere to a schedule. She needs a workstation that avoids all but occasional interaction with supervisors, co-workers and the general public. Finally, she can tolerate few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work environment.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born [i]n April … 1973 and was 46 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2020, through the date of this decision (20 CFR 404.1520(g)).

Tr. 354–70.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

11

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each

element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id*.

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*,

13

*800 F.2d 535, 545 (6th Cir. 1986) (citing Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).*

**Discussion**

Davis's argument involves the opinions of the state agency reviewers, Drs. Hill and Matyi. Davis asserts that the doctors' opinions were "materially different from one another." Doc. 11, at 2. Despite those differences, Davis complains, the ALJ didn't recognize the difference, found "generally persuasive" both opinions without distinguishing them, and omitted some of Dr. Matyi's assessed limitations in the ALJ's RFC. Doc. 9, at 6–10; Doc. 11, at 2–3. The gist of Davis's argument is that the ALJ did those things without explaining why. So the problem, Davis clarifies, isn't that the ALJ omitted Dr. Matyi's limitations from the RFC. It's that the ALJ omitted Dr. Matyi's limitations from the RFC without explaining why. Doc. 11, at 3.

The ALJ recounted the opinions of Dr. Hill and Dr. Matyi and recognized that they were different. Tr. 357. Each doctor's opinion contained some limitations which the other's didn't contain. Tr. 357. The ALJ discussed the two opinions together and found that they were "generally persuasive." Tr. 367–68.

The ALJ first discussed Dr. Hill's opinion. Tr. 367. The ALJ wrote that Dr. Hill found that Davis can "complete simple and some multistep tasks in a predictable work environment with few changes and with flexible production

demands," and "can adjust to occasional, routine changes in the work environment." Tr. 367, 590.

Next, the ALJ discussed Dr. Matyi's opinion. The ALJ explained that Dr. Matyi found that Davis can "comprehend and remember a variety of task instructions," "carry out simple (1–2 step) and occasional complex/detailed (3– 4 step) tasks, maintain attention, make simple decisions, and adequately adhere to a schedule." Tr. 367, 600. Davis "would need a relatively isolated workstation and supervisory support when first learning job tasks" and can "relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisory scrutiny." Tr. 367, 600. Dr. Matyi found that Davis can "adapt to a setting in which duties are routine and predictable and in which changes are infrequent, explained in advance, and introduced slowly." Tr. 367, 601. And Davis "would require supervisory support with goal setting and planning." Tr. 367, 601.

While Dr. Hill's and Dr. Matyi's opinions contained some different limitations, overall they are generally consistent. Incorporating aspects of both opinions, the ALJ assessed an RFC that found, in relevant part, that:

> [Davis] can perform simple, routine, and repetitive one-to-two step and occasional three-to-four step tasks, but not at a production rate pace (so, for example, no assembly line work). She can make simple work-related decisions, maintain attention, and adequately adhere to a schedule. She needs a workstation that avoids all but occasional interaction with supervisors, co-workers and the

> general public. Finally, she can tolerate few changes
> in the work setting, defined as routine job duties
> that remain static and are performed in a stable,
> predictable work environment.

Tr. 359.

Davis takes exception to two limitations from Dr. Matyi's opinion that the ALJ did not include in the RFC—that Davis needs "a relatively isolated workstation and supervisory support when first learning job tasks" and that she can have no more than "superficial" interaction with others. Doc. 9, at 8. Davis's sole argument is that the ALJ erred because a subsequent reviewer could not understand why the ALJ omitted those limitations from the RFC. *Id.* at 10, Doc. 11, at 3.

### 1.   *Supervisory support when first learning job tasks*

In *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015), the Sixth Circuit found that the ALJ did not err when omitting without explanation limitations that a state agency reviewing doctor assessed even though the ALJ assigned great weight to that opinion. The court explained that only one state agency reviewing doctor assessed the omitted limitations and the record didn't support them. *Id.* ("The ALJ is charged with assessing a claimant's RFC 'based on all of the relevant medical and other evidence' of record …. [and] there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale") (quoting 20 C.F.R. § 416.945(a)(3) and citing *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-cv-260, 2014 WL

16

346287, at *11 (N.D. Ohio Jan. 30, 2014)); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC")).

Here, the ALJ found "generally persuasive" Dr. Matyi's opinion and wasn't required to include Dr. Matyi's *supervisory support* limitation in the RFC. This is so because only Dr. Matyi assessed that limitation and the record doesn't support the need for it. *Reeves*, 618 F. App'x at 275.

Nothing in the record shows that Davis needs *supervisory support when first learning job tasks*. In fact, Davis testified at the hearing that she has no trouble performing a job. Tr. 396–97.  Rather, Davis has trouble keeping a job because of attendance problems from physical impairments. Tr. 396–97. Davis testified that she can read and follow a recipe to make cookies. Tr. 394–95. Davis wrote in her function report that she had no problems with memory, concentration, understanding, or following instructions. Tr. 739. She can handle money and didn't need reminders to care for herself, take medication, or go places. Tr. 737, 738. Davis said that she had no trouble paying attention unless she was tired. Tr. 739. She could follow written instructions "very well" and spoken instructions "unless they were very long." Tr. 739. During the consultative exam, Dr. Wang observed that Davis had "no issues" understanding or remembering and no impairment in attention or concentration. Tr. 2285–86. While Davis stated at the hearing that she "sometimes" had difficulty remembering conversations and searched for words

17

when she spoke, Tr. 394, those statements don't show that Davis required *supervisory support when first learning job tasks*.

Also, the ALJ's decision as a whole is sufficient to make clear to a subsequent reviewer why Davis didn't require a *supervisory support when first learning job tasks* limitation. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("Judicial review of the Secretary's findings must be based on the record as a whole."); *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2020) ("[The court] read[s] the ALJ's decision as a whole and with common sense."). The ALJ accurately concluded that Davis didn't allege substantial mental limitations. Tr. 368. As for Davis's ability to understand, remember, and apply information, the ALJ remarked that there were inconsistencies between Davis's allegations about memory problems and Davis's statements in the function report about activities Davis performed. Tr. 357. The ALJ also explained that Davis's statements about her mental limitations were not persuasive because Davis "received only minimal treatment" for her depression. Tr. 368. While the ALJ could have more neatly packaged her findings, the ALJ's decision as a whole contains enough information to understand why the ALJ omitted from the RFC a *supervisory support when first learning job tasks* limitations. *See Heston*, 245 F.3d at 535.

2.       *Relatively isolated workstation and superficial interaction*

The other limitations that Dr. Matyi assessed—Davis needs *a relatively isolated workstation* and can have no more than *superficial* interaction—are contained in the ALJ's RFC.

The ALJ limited Davis to no more than occasional contact with co-workers, supervisors, and the general public. Tr. 359. That limitation accounts for a *relatively isolated workstation*. Tr. 365 (ALJ explaining that Davis "needs a workstation that avoids all but occasional interaction with supervisors, co-workers and the general public"); *see Stamper v. Comm'r of Soc. Sec.*, No. 1:18-cv-697, 2019 WL 2437813, at *5 n.4 (N.D. Ohio May 8, 2019), *report and recommendation adopted*, 2019 WL 2437016 (N.D. Ohio June 11, 2019) ("In Social Security parlance, 'occasional' means 'occurring from very little up to one-third of the time'") (quoting Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5). Davis agues that Dr. Matyi limited Davis to a "near isolated workstation" and that if Dr. Matyi wanted to limit Davis to *occasional* interaction with others than Dr. Matyi would have said so. Doc. 9, at 8. Dr. Matyi didn't write *near isolated*, she wrote *relatively isolated*. Tr. 600. And I decline to speculate about what Dr. Matyi was thinking when she chose her words. The description *relatively isolated* is consistent with the Social Security Administration's definition of *occasional*—"very little up to one-third of the time." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5. The ALJ's characterization of what Dr. Matyi wrote is not erroneous.

19

Next up is Davis's argument that the ALJ's finding—Davis can have no more than *occasional* interaction with others—is different than Dr. Matyi's opinion that Davis can have no more than *superficial* interaction with others. Doc. 8, at 8. Dr. Matyi wrote that Davis can "relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." Tr. 600. Dr. Matyi's sentence is confusing because the *superficial* element renders superfluous the *no over-the-shoulder supervisor scrutiny* description.

In any event, one might wonder whether there is a material difference between *superficial* interactions and *occasional* interactions. The term *superficial* is not defined under the Dictionary of Occupational Titles or Selected Characteristics of Occupations. *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496, at *9 (N.D. Ohio Nov. 8, 2022), *report and recommendation adopted*, 2022 WL 17985680 (N.D. Ohio Dec. 29, 2022); *see Beulah v. Comm'r of Soc. Sec. Admin.*, No. 1:20-cv-02271, 2022 WL 1609236, at *29 (N.D. Ohio Mar. 25, 2022) ("superficial is not a defined term"), *report and recommendation adopted sub nom. Beulah v. Kijakazi*, 2022 WL 1606286 (N.D. Ohio May 20, 2022); *Stamper*, 2019 WL 2437813, at *5. And the Sixth Circuit has found meritless the argument that a limitation to *occasional* interactions was inconsistent with an opined limitation to *superficial* interactions. *Reeves*, 618 F. App'x at 275.

20

Even if the Court finds that *occasional* interaction is inconsistent with *superficial* interaction, Davis's argument fails because there is no evidence in the record that Davis requires only *superficial* interaction with others. *Reeves*, 618 F. App'x at 275. And the ALJ's decision, taken as a whole, contains enough information so that the Court can understand and review the ALJ's reason for omitting that limitation. *Heston*, 245 F.3d at 535.

In her function report, Davis stated that she had no problems getting along with family, friends, neighbors, or others. Tr. 738–39. She texted with others. Tr. 738. Davis got along well with authority figures and had never been fired or laid off from a job because of problems getting along with others. Tr. 739. Davis told Dr. Wang that she had "good" or "pretty good" relationships with family, teachers, and peers. Tr. 2282. She had "okay" relationships with supervisors at work. Tr. 2283. She got along with people. Tr. 2283. Davis reported that she kept to herself "a lot" at work and wrote in her function report that she had not been going out with others as often as she had in the past. Tr. 738. Dr. Wang opined that Davis's self-reported social withdrawal "could have a bit of a negative impact on [Davis's] ability to interact with others in a work setting." Tr. 2286. The ALJ recognized that Davis "reported that she is withdrawn and tended to isolate" but found that Davis nevertheless "maintain[ed] some close relationships in the community, get[s] along well with medical providers, and is able to communicate effectively with family and friends via text messaging." Tr. 357. And the ALJ remarked that Davis herself

21

didn't report substantial limitations from her mental impairments and received only minimal treatment. Tr. 368. Still, the ALJ accounted for Davis's limitations in social interaction by finding that Davis could have no more than occasional interaction with supervisors, co-workers and the general public. Tr. 359.

In sum, the evidence above doesn't support a finding that Davis needed a *superficial interaction* limitation. And the ALJ's decision as a whole is sufficient to understand why the ALJ omitted that limitation and why the ALJ adopted the state agency reviewers' assessed limitations that were supported by evidence in the record.

### Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: March 30, 2023

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).